UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hamy Anthony Hai,<br><br>            Plaintiff,<br><br>v.<br><br>First Data Corporation and<br>Fiserv, Inc.,<br><br>            Defendants. | Civil Action No. _____<br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Hamy Anthony Hai (a/k/a Tony Hai), by and through his undersigned attorneys, OlenderFeldman, LLP, as and for his Complaint against Defendants First Data Corporation ("First Data" or the "Company"), and Fiserv, Inc. ("Fiserv"), alleges as follows:

## THE PARTIES

1. Plaintiff, Mr. Hai, is a United States citizen domiciled in the State of Florida. At times material to this Complaint, Mr. Hai was an employee of First Data, reporting to the Company's senior leadership team in its New York, New York office.

2. Defendant First Data is a Delaware corporation with its principal executive offices located at 225 Liberty Street, 29th Floor, New York, New York 10281.

3. Defendant Fiserv is a Wisconsin corporation with its principal executive offices located at 255 Fiserv Drive, Brookfield, Wisconsin 53045. Upon information and belief, First Data was acquired by Fiserv in a stock transaction effective on or around July 29, 2019, and, therefore, Fiserv is liable for the debts and obligations of First Data as a successor in interest, including Mr. Hai's claims against First Data set forth herein.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) (Diversity Jurisdiction), because Mr. Hai, First Data, and Fiserv are citizens of different States and the amount in controversy exceeds the sum of $75,000.

5. In addition, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges violations of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). At relevant times, First Data was a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined in 15 U.S.C. § 1681a; and, at all relevant times, Mr. Hai was a "consumer" as defined in 15 U.S.C. § 1681a.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)-(c), because a substantial part of the events and omissions giving rise to the claims set forth herein occurred in this judicial district, First Data resides in this judicial district, First Data made employment decisions regarding Mr. Hai in this District, and Fiserv's liability to Mr. Hai arises from the actions of First Data in this District.

7. This Court had personal jurisdiction over First Data because the Company *inter alia* transacts business within New York, New York, and engages in a persistent course of conduct in, and derives substantial revenue from its services rendered in New York, New York.

8. This Court had personal jurisdiction over Fiserv because, upon information and belief, Fiserv *inter alia* transacts business within New York, New York, and engages in a persistent course of conduct in, and derives substantial revenue from its services rendered in New York, New York, as a successor in interest to First Data.

9. First Data was an "employer" of Mr. Hai within the meaning of Fla. Stat. § 448.109(1)(a) at relevant times.

2

10. Mr. Hai was an "employee" of First Data within the meaning of Fla. Stat. § 448.109(1)(a) at relevant times.

## FACTUAL ALLEGATIONS

### A. Mr. Hai is Hired by First Data; First Data Enters into Several Agreements with Mr. Hai Regarding His Compensation

11. On or around April 14, 2014, First Data hired Mr. Hai to serve as its Senior Vice President, Technology. Mr. Hai's compensation package included base salary, incentive compensation, and an equity grant comprised of options and restricted stock.

12. First Data entered into several contractual arrangements with Mr. Hai concerning his compensation during his employment with First Data.

13. During Mr. Hai's employment with First Data, the Company maintained a 2015 Omnibus Incentive Plan, as modified and amended thereafter (the "Incentive Compensation Plan").

14. During Mr. Hai's employment with First Data, the Company entered into several Award Agreements with Mr. Hai pursuant to the Incentive Compensation Plan.

15. By the terms of the Incentive Compensation Plan and the Award Agreements, Mr. Hai became entitled to *inter alia* performance compensation awards on an annual basis.

16. Mr. Hai became eligible for performance compensation awards for each calendar year performance period, so long as he remained employed with the Company on the last day of the performance period, according to the Incentive Compensation Plan.

17. The Incentive Compensation Plan provides that performance compensation awards shall be issued as soon as administratively practicable following the close of the performance period.

18. During the course of Mr. Hai's employment with First Data, the Company typically issued performance compensation awards within the first three (3) months of the following calendar year.

19. By the terms of the Incentive Compensation Plan, the Company's Compensation, Governance, and Nomination Committee of its Board of Directors located in New York, New York, had discretion at all times to accelerate the vesting of an employee's restricted stock at any time and for any reason.

20. The Incentive Compensation Plan is governed by the laws of the State of Delaware and does not contain a choice of forum clause.

21. During the course of Mr. Hai's employment with First Data, the Company maintained the First Data Corporation Severance Plan for U.S. Employees, effective as of January 1, 2015, as modified and amended thereafter (the "Severance Plan").

22. Pursuant to the Severance Plan, the Company agreed to pay eligible employees, including Mr. Hai, certain severance payments in the event of an involuntary separation from employment without "cause".

23. The amount of the severance payments under the Severance Plan was calculated based upon the employee's years of service with the Company, and the Company had discretion to offer severance up to six (6) months' of the employee's base salary.

24. Pursuant to the Severance Plan, the Company was obligated to commence severance payments thereunder no later than thirty-one (31) days following an eligible employee's separation from employment with First Data.

25. The Severance Plan is governed by the laws of the State of Delaware and does not contain a choice of forum clause.

**B. Mr. Hai Performs Well as an Employee of First Data, First Data Fails to Comply with the Incentive Compensation Plan Regarding Mr. Hai's 2018 Bonus Award**

26. Mr. Hai performed his role as Senior Vice President, Technology for First Data exceedingly well.

27. Mr. Hai was promoted to the role of Chief Information Officer ("CIO") for the Company's Global Financial Solutions Unit reporting directly to the Company's President, Guy Chiarello, in the Company's New York office.

28. Mr. Hai performed his duties as CIO well.

29. Pursuant to the Incentive Compensation Plan, Mr. Hai became entitled to a performance compensation award for the performance period ending as of December 31, 2018 (the "2018 Bonus").

30. Mr. Hai fulfilled the condition precedent to issuance of his 2018 Bonus under the Incentive Compensation Plan, by remaining employed by First Data on the last day of the performance period, December 31, 2018.

31. There were no other conditions precedent to the Company's obligation to issue Mr. Hai his 2018 Bonus in the Incentive Compensation Plan.

32. Upon information and belief, the First Data's Board of Directors and/or an authorized committee thereof approved Mr. Hai's 2018 Bonus award, which consisted of substantial valuable stock in the Company.

33. Upon information and belief, the time in which it became administratively practicable for the Company to issue Mr. Hai's 2018 Bonus lapsed on or before March 31, 2019.

34. Therefore, the Company was contractually obligated to issue Mr. Hai's 2018 Bonus as of March 31, 2019.

35. The Company never issued the 2018 Bonus award to Mr. Hai.

36. Mr. Hai made repeated demands for issuance of the 2018 Bonus thereafter.

37. To date, First Data has failed to issue Mr. Hai the 2018 Bonus as required by the Incentive Compensation Plan.

### C. First Data Enters Into Separation Agreement With Mr. Hai

38. In early 2019, First Data approached Mr. Hai (and other First Data employees) regarding a separation offer.

39. The specific details of the separation offer were communicated to Mr. Hai across several meetings with First Data's President, Mr. Chiarello, including meetings on February 27, 2019 and March 14, 2019.

40. Pursuant to the separation offer, Mr. Hai would receive his then-outstanding 2018 Bonus award, six (6) months of severance and a healthcare support payment, upon his separation from employment with First Data. In addition, First Data would take all necessary steps to vest Mr. Hai's restricted stock, including the stock issued on account of the 2018 Bonus award, upon his separation from First Data.

41. Upon information and belief, Mr. Chiarello had full authority to conduct these discussions with Mr. Hai, including with the knowledge and authority of the Company's Chief Executive Officer, its Board of Directors, and/or an appropriate committee thereof.

42. From the time that Mr. Hai learned of the separation offer in early 2019, he refrained from seeking and securing alternative employment beyond First Data, in reasonable reliance upon the promises made by First Data regarding the valuable consideration that would be remitted to him under the separation agreement.

43. Mr. Chiarello and Mr. Hai discussed the material terms of the separation agreement offer with specificity, including with regard to his 2018 Bonus, severance, healthcare support, and the accelerated vesting of his restricted stock.

44. Following these detailed discussions between Mr. Chiarello and Mr. Hai, Mr. Hai advised Mr. Chiarello that he accepted the offer as discussed.

45. By virtue of Mr. Hai's acceptance of the offer, and an oral separation agreement was

formed under New York law (hereinafter, the "Separation Agreement").

46. Mr. Chiarello confirmed to Mr. Hai that nothing further was required and that Mr. Hai had been placed on the "separation list".

47. There were no contingencies or conditions precedent to the enforcement of the Separation Agreement, except that Mr. Hai continue to remain employed by the Company until his separation without an intervening termination for cause.

48. First Data has admitted in writing that the oral Separation Agreement was agreed and binding on the parties.

49. First Data has admitted in writing that there were no contingencies or conditions precedent to the enforcement of the Separation Agreement, except that Mr. Hai continue to remain employed by the Company until his separation without an intervening termination for cause.

50. After entering into the Separation Agreement, Mr. Hai continued to perform his duties as CIO well.

### D. First Data Carries Out a Pretextual "Cause" Termination of Mr. Hai on the Eve of His Separation, In an Attempt to Avoid its Payment Obligations to Mr. Hai

51. After Mr. Hai and First Data entered into the oral Separation Agreement, the Company carried out a termination of Mr. Hai for "cause", for the purpose of avoiding its obligations to Mr. Hai upon his separation from employment.

52. On April 1, 2019, First Data, acting through its General Counsel, Mr. Rosman, notified Mr. Hai by telephone that Mr. Hai would be terminated from First Data for "cause".

53. Mr. Rosman notified Mr. Hai that the "cause" for termination of Mr. Hai arose from Mr. Hai's alleged violation of a First Data policy, by failing to report Mr. Hai's involvement in a traffic incident within three (3) days of the incident.

54. Other than this alleged policy violation, the Company did not assert any other basis

to terminate Mr. Hai for "cause".

55. But for First Data's termination of Mr. Hai for the alleged policy violation, Mr. Hai would have remained employed by First Data for an additional period of time.

56. In truth and in fact, no such policy violation had occurred.

57. Mr. Hai complied with the policy at issue, as he had a discussion with Mr. Rosman regarding the incident within three (3) days as required.

58. Further, no policy violation incurred in fact, because First Data had actual knowledge of the incident within the three (3) day window of time, from other sources.

59. Mr. Hai confirmed for First Data in no uncertain terms that the purported policy violation had not occurred, in multiple communications through counsel after April 1, 2019.

60. In reliance upon its pretextual and baseless "cause" termination, the Company has refrained from providing Mr. Hai with the valuable consideration it owes Mr. Hai under the Separation Agreement.

61. Since April 1, 2019, First Data has not made a single payment to Mr. Hai under the Separation Agreement.

62. Furthermore, First Data did not vest Mr. Hai's unvested stock, issue him additional stock on account of his 2018 Bonus award, or provide any healthcare support payments, as agreed in the Separation Agreement.

63. Since April 1, 2019, Mr. Hai, though counsel, has made repeated demands that the Company comply with its obligations to Mr. Hai.

64. The Company has failed and refused to comply with its obligations upon receipt of Mr. Hai's multiple demands.

65. First Data's failure to comply with the Separation Agreement continues to-date.

66. The Company's failure to provide Mr. Hai with the consideration to which he is

entitled at this time, amounts to a breach of the Company's material obligations to Mr. Hai under the Separation Agreement, and, alternatively, under the Incentive Compensation Plan and the Severance Plan.

67. The Company's failures in this regard have caused Mr. Hai substantial financial harm.

68. Mr. Hai's reliance on the Company's representations during the negotiation of the Separation Agreement were to Mr. Hai's detriment, as he was left without employment or the financial support that was the subject of his Separation Agreement with First Data, following his separation on April 1, 2019.

69. The Company also did not make any severance payments to Mr. Hai under the Severance Plan, within thirty-one (31) days following his involuntary termination.

70. The Company's failure to make these payments to Mr. Hai have caused Mr. Hai substantial financial harm.

71. In the months following Mr. Hai's separation from employment with First Data, the Company stock that should have been issued to him by March 31, 2019, or alternatively under the Separation Agreement has considerably increased in value.

72. As a result, Mr. Hai has suffered additional financial harm on account of lost profits relative to the fully vested stock that he should have been issued months ago.

### E. First Data Effectuates Unauthorized Disclosure of Non-Public Personal Information; Violates Federal Law Regarding Use of Personal Information

73. Upon information and belief, First Data engaged a consumer reporting agency to provide consumer reports, including background check information, regarding its employees.

74. Upon information and belief, First Data obtained information regarding Mr. Hai relative to a traffic indent from a consumer reporting agency between on or around March 29, 2019 and April 1, 2019.

75. Upon information and belief, the consumer reporting agency that provided the Information to First Data advised First Data of its obligations under the FCRA, including its obligations under 15 U.S.C. § 1681b(b)(3) regarding permissible use of the Information, because consumer reporting agencies are required to do so under the FCRA.

76. In the days and weeks following First Data's receipt of the information regarding the traffic incident, First Data permitted the dissemination of the information to other First Data employees and other persons outside First Data, without authority.

77. On or April 1, 2019, First Data took further adverse employment action against Mr. Hai, by terminating his employment for "cause", based on the information, without providing Mr. Hai with a copy of the background report or a written summary of his rights under the FCRA, as required by 15 U.S.C. § 1681b(b)(3).

78. As a result of this failure on the part of First Data, and its immediate termination of Mr. Hai during a telephone call on April 1, 2019, Mr. Hai was unable to address the information contained in the report before First Data took adverse action against him.

79. First Data has communicated to Mr. Hai through counsel that it considers the reported incident as a further basis to justify its termination of Mr. Hai for "cause".

80. Mr. Hai has suffered harm as a result of First Data's violation of the FCRA, including the loss of his employment, and the loss of consideration upon his termination under the Separation Agreement.

## COUNT I – BREACH OF CONTRACT UNDER NEW YORK LAW
## (ORAL SEPARATION AGREEMENT)

81. Mr. Hai hereby incorporates by reference the allegations in paragraphs 1-80.

82. Mr. Hai and First Data entered into a valid and binding oral contract under New York law.

83. First Data has admitted that the terms of the oral contract required it to (i) pay Mr. Hai severance and healthcare support, (ii) vest Mr. Hai's restricted stock, and (iii) issue to Mr. Hai substantial unrestricted and fully vested stock on account of his 2018 Bonus, all upon Mr. Hai's separation from employment with First Data

84. First Data has admitted that there were no conditions precedent to First Data's obligations under the oral contract, except that Mr. Hai remain employed until his separation without a termination for cause.

85. Mr. Hai satisfied any and all conditions to the right to receive consideration under the contract.

86. At no time did the Company have cause for termination of Mr. Hai.

87. First Data failed to provide the consideration to Mr. Hai upon his separation from employment with First Data as agreed.

88. Although Mr. Hai thereafter demanded payment, First Data has continued to fail and refuse to provide the consideration due to Mr. Hai.

89. First Data thereby breached the oral contract between the parties.

90. Mr. Hai has been damaged by First Data's breach of contract.

91. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for breach of the oral contract with First Data.

## COUNT II - BREACH OF CONTRACT UNDER DELAWARE LAW
## (INCENTIVE COMPENSATION PLAN, IN THE ALTERNATIVE TO COUNT I)

92. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-91.

93. Mr. Hai and First Data entered into a valid and binding contract, to wit, the Incentive Compensation Plan, which is governed by Delaware law.

94. Mr. Hai satisfied any and all conditions to the right to receive his 2018 Bonus award under the Incentive Compensation Plan, when he remained employed by First Data through December 31, 2018.

95. First Data failed to issue to Mr. Hai his 2018 Bonus award when due, on or before March 31, 2019.

96. Although Mr. Hai thereafter demanded issuance of his 2018 Bonus Award, First Data has continued to fail and refuse to issue the award.

97. First Data thereby breached the Incentive Compensation Plan.

98. Mr. Hai has been damaged by First Data's breach.

99. Mr. Hai has suffered further financial harm because the value of the stock that he should have been issued in the 2018 Bonus award has substantially increased in value since it came due.

100. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for breach of the Incentive Compensation Plan against First Data.

## COUNT III – BREACH OF CONTRACT UNDER DELAWARE LAW
## (SEVERANCE PLAN, IN THE ALTERNATIVE TO COUNT I)

101. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-100.

102. Mr. Hai and First Data entered into a valid and binding contract, to wit, the Severance Plan, which is governed by Delaware law.

103. Mr. Hai satisfied any and all conditions to the right to receive the payments under the Severance Plan.

104. First Data failed to make the payments to Mr. Hai upon his separation from employment with First Data, under the Severance Plan.

105. Although Mr. Hai thereafter demanded payment, First Data has continued to fail and refuse to pay the amounts due under the Separation Agreement.

106. First Data thereby breached the Separation Agreement.

107. Mr. Hai has been damaged by First Data's breach.

108. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for breach of the Severance Plan against First Data.

## COUNT IV – PROMISSORY ESTOPPEL UNDER NEW YORK LAW
## (SEPARATION AGREEMENT, IN THE ALTERNATIVE TO COUNT I)

109. Mr. Hai hereby incorporates by reference the allegations in paragraphs 1-108.

110. Beginning in early 2019, First Data made a clear and unambiguous promise to Mr. Hai to issue his 2018 Bonus award, pay him severance and healthcare support, and vest all of his restricted stock, upon his separation from employment with First Data.

111. Mr. Hai reasonably and foreseeably relied on First Data's promises, when he refrained making alterative financial arrangements for his separation from First Data in early 2019.

112. Mr. Hai suffered damages from First Data's failure to fulfill its promises to Mr. Hai.

113. As a result, First Data is liable to Mr. Hai as set forth herein.

114. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim of promissory estoppel as set forth herein.

## COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER NEW YORK LAW (SEPARATION AGREEMENT)

115. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-114.

116. New York law implies a covenant of good faith and fair dealing pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

117. The Separation Agreement is a valid and enforceable oral agreement between Mr. Hai and First Data under New York law.

118. First Data breached the covenant of good faith and fair dealing implied in the Separation Agreement when it terminated Mr. Hai for "cause", for the purpose of avoiding its obligations under the Separation Agreement.

119. First Data's actions had the effect of destroying Mr. Hai's rights to receive substantial consideration under the Separation Agreement upon his separation on April 1, 2019, including payments and vesting of his unvested stock.

120. Therefore, First Data breached the covenant of good faith and fair dealing implied in the Separation Agreement.

121. Mr. Hai has incurred damages and continues to incur damages as a direct and proximate result of First Data's breach of the implied covenant of good faith and fair dealing in the Separation Agreement.

122. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for breach of the covenant of good faith and fair dealing implied within his Separation Agreement with First Data.

## COUNT VI – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER DELAWARE LAW (INCENTIVE COMPENSATION PLAN, IN THE ALTERNATIVE TO COUNTS I & V)

123. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-122.

124. Delaware law implies a covenant of good faith and fair dealing pursuant to which neither party to a contract may act arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the other party reasonably expected.

125. The Incentive Compensation Plan was a valid and enforceable agreement between the parties under Delaware law at relevant times.

126. First Data's pretextual and baseless "cause" termination of Mr. Hai, and the Company's reliance upon same as an excuse for its failure to fulfill is obligation to Mr. Hai under the Incentive Compensation Plan, was arbitrary and unreasonable, as it was premised on a factually unfounded alleged policy violation.

127. Said "cause" termination of Mr. Hai frustrated the fruits of the bargain that Mr. Hai reasonably expected through the Incentive Compensation Plan, when he continued to remain employed by First Data, and performed well throughout Fiscal Year 2018, with the expectation of his 2018 Bonus award.

128. Therefore, First Data breached the covenant of good faith and fair dealing implied in the Incentive Compensation Plan.

129. Mr. Hai has incurred damages and continues to incur damages as a direct and proximate result of First Data's breach of the covenant of good faith and fair dealing implied in the Incentive Compensation Plan.

130. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for breach of the covenant of good faith and fair dealing implied within the Incentive Compensation Plan against First Data.

## COUNT VII – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING UNDER DELAWARE LAW (SEVERANCE PLAN, IN THE ALTERNATIVE TO COUNTS I & V)

131. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-130.

132. The Severance Plan was a valid and enforceable agreement between First Data and Mr. Hai under Delaware law at relevant times.

133. First Data's withholding of severance payments from Mr. Hai under the Severance Plan due to its alleged "cause" termination of Mr. Hai was arbitrary and unreasonable, as it was premised on a factually unfounded alleged policy violation.

134. Said "cause" termination of Mr. Hai frustrated the fruits of the bargain that Mr. Hai reasonably expected through the Severance Plan, when Mr. Hai continued to remain employed by First Data, performed well throughout his employment with the Company, and refrained from securing other employment or making other financial arrangements for the conclusion of his employment with First Data on April 1, 2019.

135. Therefore, First Data breached the covenant of good faith and fair dealing implied in the Severance Plan.

136. Mr. Hai has incurred damages and continues to incur damages as a direct and proximate result of First Data's breach of the covenant of good faith and fair dealing implied in the Severance Plan.

137. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for breach of the covenant of good faith and fair dealing implied within the Severance Plan against First Data.

## COUNT VIII – FAILURE TO PAY WAGES UNDER FLORIDA LAW
## (ORAL SEPARATION AGREEMENT)

138. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-137.

139. At times relevant to this action, First Data was required to remit certain payments to Mr. Hai under the Separation Agreement, which qualify as "wages" within the meaning of Fla. Stat. § 448.07(c).

140. First Data violated Fla. Stat. § 448.110 by failing to pay such wages owed to Mr. Hai as required under the Separation Agreement, upon his separation from First Data on or around April 1, 2019.

141. As a result of First Data's violations of Fla. Stat. § 448.110, Mr. Hai has suffered damages.

142. Mr. Hai sent First Data a written notice of his claim in accordance with Fla. Stat. § 448.110(6), on August 21, 2019.

143. First Data acknowledged receipt of the written notice, but failed to pay the total amount of unpaid wages or otherwise satisfy the claim to Mr. Hai's satisfaction within fifteen (15) days of receipt of the written notice, as required by Fla. Stat. § 448.110(6).

144. Mr. Hai is entitled to an award of his unpaid wages, plus an equal amount in liquidated damages, together with his attorney's fees and costs.

145. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for unpaid wages against First Data.

## COUNT IX – FAILURE TO PAY WAGES UNDER FLORIDA LAW
## (INCENTIVE COMPENSATION PLAN, IN THE ALTERNATIVE TO COUNT VIII)

146. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-145.

147. At times relevant to this action, First Data was required to remit certain payments to Mr. Hai under the Incentive Compensation Plan, which qualify as "wages" within the meaning of

Fla. Stat. § 448.07(c).

148. First Data violated Fla. Stat. § 448.110 by failing to pay such wages owed to Mr. Hai as required under the Incentive Compensation Plan when due.

149. As a result of First Data's violations of Fla. Stat. § 448.110, Mr. Hai has suffered damages.

150. Mr. Hai sent First Data a written notice of his claim in accordance with Fla. Stat. § 448.110(6), on August 21, 2019.

151. First Data acknowledged receipt of the written notice, but failed to pay the total amount of unpaid wages or otherwise satisfy the claim to Mr. Hai's satisfaction within fifteen (15) days of receipt of the written notice, as required by Fla. Stat. § 448.110(6).

152. Mr. Hai is entitled to an award of his unpaid wages, plus an equal amount in liquidated damages, together with his attorney's fees and costs.

153. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for unpaid wages against First Data.

### COUNT X – FAILURE TO PAY WAGES UNDER FLORIDA LAW (SEVERANCE PLAN, IN THE ALTERNATIVE TO COUNT VIII)

154. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-153.

155. At times relevant to this action, First Data was required to remit certain payments to Mr. Hai under the Severance Plan, which qualify as "wages" within the meaning of Fla. Stat. § 448.07(c).

156. First Data violated Fla. Stat. § 448.110 by failing to pay such wages owed to Mr. Hai as required under the Severance Plan, within thirty-one (31) days from his separation from First Data on or around April 1, 2019.

157. As a result of First Data's violations of Fla. Stat. § 448.110, Mr. Hai has suffered

damages.

158. Mr. Hai sent First Data a written notice of his claim in accordance with Fla. Stat. § 448.110(6), on August 21, 2019.

159. First Data acknowledged receipt of written notice, but failed to pay the total amount of unpaid wages or otherwise satisfy the claim to Mr. Hai's satisfaction within fifteen (15) days of receipt of the written notice, as required by Fla. Stat. § 448.110(6).

160. Mr. Hai is entitled to an award of his unpaid wages, plus an equal amount in liquidated damages, together with his attorney's fees and costs.

161. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim for unpaid wages against First Data.

## COUNT XI – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (15 U.S.C. § 1681, *et seq.*)

162. Mr. Hai hereby incorporates by reference allegations in paragraphs 1-161.

163. First Data willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an adverse employment decision to Mr. Hai before taking adverse action that was based in whole or in part on that report, and, instead, permitted unauthorized disclosure of that information to other First Data employees and persons outside the Company.

164. First Data willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the summary of rights required to Mr. Hai before taking adverse action that was based in whole or in part on a consumer report.

165. As a result of First Data's willful violation of the FCRA, Mr. Hai is entitled to statutory and punitive damages, along with attorney fees and costs, under 15 U.S.C. §1681n(a).

166. Upon information and belief, Fiserv is liable for First Data's obligations as a successor in interest, including Mr. Hai's claim under the FCRA.

## **PRAYER FOR RELIEF**

Wherefore, Mr. Hai demands judgment in his favor and against Defendants First Data and Fiserv, as follows:

A. Compensatory damages,

B. Statutory damages;

C. Punitive damages;

D. Liquidated damages as authorized by Fla. Stat. § 448.110(c);

E. Back Pay;

F. Attorneys' fees and costs; and

G. Such other relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Hai demands trial by jury in this action of all issues so triable.

Dated: September 6, 2019

Respectfully submitted,

**OlenderFeldman, LLP**

_____
Lauren M. Paxton, Esq.
OLENDERFELDMAN LLP
1180 Avenue of the Americas, 8th Floor
New York, New York 10036
(908) 964-2485
lpaxton@olenderfeldman.com
*Counsel for Plaintiff*